**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **CHARLES DAVID MCLEOD, JR., *et al.*,**<br><br>***Plaintiffs*,**<br><br>**v.**<br><br>**POLARIS INDUSTRIES, INC., *et al.*,**<br><br>***Defendants*.** | **CIVIL ACTION NO.**<br>**3:26-mc-00002-TES** |

**ORDER DENYING DEFENDANT POLARIS INDUSTRIES, INC.'S MOTION TO QUASH**

This motion arises from a suit pending in the United States District Court for the Western District of Pennsylvania (case no. 2:23-cv-01344). [Doc. 1, ¶ 1]. Plaintiffs allege that Defendants' Recreational Off-Highway Vehicle ("ROV") product was defectively designed, causing the death of David James McLeod from injuries sustained in a rollover event. [*Id.* at ¶¶ 1–2]; [Doc. 1-1, p. 2]. Accordingly, Plaintiffs brought claims under Pennsylvania law against Defendant Polaris Industries, Inc. ("Polaris") for strict liability, negligence, and breach of warranty. [Doc. 1-1, p. 2].

As part of ongoing discovery, Plaintiffs issued a subpoena to Paul Vitrano—a man they describe as a "uniquely situated fact witness" for the suit – Polaris' former in-house lawyer. [Doc. 1-3]; *see also* [Doc. 2, p. 2]. In response, Polaris filed a motion to quash the subpoena with this Court on August 7, 2026, asserting that "Plaintiffs cannot

demonstrate that Mr. Vitrano possesses unique, non-privileged factual information that is crucial to Plaintiffs' case and which has not or cannot be obtained through other discovery." [Doc. 1, ¶ 5].[1] Polaris attached a brief in support of its motion, [Doc. 1-1], several exhibits, [Docs. 1-2–1-7], and a proposed order, [Doc. 1-8], to its motion. On August 27, 2026, Plaintiffs responded in opposition to Polaris' motion to quash. [Doc. 2]. In support, Plaintiffs included several exhibits of their own. [Docs. 2-1–2-18].

After careful review, the Court **DENIES** Defendant Polaris' motion to quash the subpoena issued to Paul Vitrano.

## BACKGROUND

Paul Vitrano previously served as a former in-house lawyer of Polaris, a corporation that designs and develops off-road recreational and utility vehicles, including ROVs. [Doc. 1, ¶ 4]; [Doc. 1-1, pp. 1–2]; [Doc. 2, p. 4]. From March 2014 to September 2018, he also served as Vice President of Global Government Relations at Polaris. [Doc. 1-1, p. 3]; [Doc. 1-2, Vitrano Decl., ¶ 7]. In this role, Vitrano provided legal advice and worked on regulatory and government compliance matters. [*Id.*]; [Doc. 2, p. 6]. From June 2018 to December 2021, Vitrano was Senior Assistant General Counsel at Polaris, serving as chief counsel to four of Polaris' global business units: Adjacent Markets, Motorcycles, Parts, Garments & Accessories/Aftermarket, and Boats. [Doc. 1-2,

[1] Under Fed. R. Civ. P. 45(d)(3), a motion to quash or modify a subpoena must be filed in the court for the district where compliance is required rather than the court where the underlying action is pending. So, this court, as opposed to the Western District of Pennsylvania, must hear and decide this motion.

Vitrano Decl., ¶ 8]. While working at Polaris, he purportedly attended meetings regarding and was otherwise involved with communications advocating for a voluntary industry safety standard for ROVs designed by the Recreational Off-Highway Vehicle Association ("ROHVA"). [Doc. 2, p. 7]; [Doc. 2-1]: [Doc. 2-8].

Before Vitrano worked at Polaris, Plaintiff claims that he was already involved with ROHVA's safety standard. Plaintiff claims that, in October 2010, Vitrano "attended a ROHVA-CPSC meeting addressing occupant-protection zones, seat-belt usage, rollover-propensity testing, understeer and oversteer, and dynamic testing of Polaris Ranger models." [Doc. 2, p. 5]; [Doc. 2-2]. Further, Vitrano appeared as ROHVA's Executive Vice President when the U.S. Consumer Product Safety Commission identified its concerns with the ROHVA standard, [Doc. 2, p. 5]; [Doc. 2-3]. And, Vitrano purportedly continued his involvement with ROHVA until he joined Polaris. [Doc. 2, p. 5]; [Doc. 2-7]; [Doc. 1-2, Vitrano Decl., ¶¶ 5, 7].

Plaintiffs claim that they learned from prior depositions that while at Polaris, Vitrano "participat[ed] in developing the subject matter used in ROHVA training" and that Vitrano may be one of the people best equipped to answer questions regarding Polaris' government relations initiatives. [Doc. 2, pp. 8–9, 12–14]; *see generally* [Doc. 2-15]–[Doc. 2-18].

## LEGAL STANDARD

Protective orders prohibiting a deposition are rare. *W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 653 (5th Cir. 1979)). Generally speaking, parties are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering certain factors. Fed. R. Civ. P. 26(b)(1). The rule is explicit: "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

To get this information, a party may subpoena a person—party or non-party—to attend a deposition or produce documents. Fed. R. Civ. P. 45(a)–(b). On timely motion, a court must quash or modify a subpoena that either requires disclosure of privileged information without exception or waiver. Fed. R. Civ. P. 45(d)(3)(A)(iii).

## DISCUSSION

Defendant Polaris argues that the subpoena of Vitrano should be quashed for reasons tied to attorney-client privilege, burden, and relevance. Because Vitrano formerly worked as an in-house lawyer at Polaris, they argue, his deposition should not be allowed to proceed. To this end, Polaris relies on two arguments: (1) the restrictive burden-shifting framework developed for depositions of opposing counsel by the Eighth Circuit in *Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986), and (2) alternatively, a weighing of the Plaintiffs' need for information against Polaris'

interest in its attorney-client relationship. Separately, Polaris also claims that the information Plaintiffs seek to obtain from Vitrano is not even relevant to begin with.

**A. Attorney-Client Privilege and *Shelton***

The attorney-client privilege exists, narrowly, to protect the communications made between an attorney and his client for the purpose of securing or providing professional legal services, to encourage full and frank communication between attorneys and their clients; the courts of Georgia and Pennsylvania are in agreement. *See, e.g.*, *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 52 (Pa. 2011); *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 746 S.E.2d 98, 103–104 (Ga. 2013). Although the privilege is a "broad privilege[,]" *Gillard*, 15 A.3d at 57, just because an attorney once functioned as in-house counsel "does not, *a fortiori*, establish that attorney-client privilege attaches to all communications involving that counsel where he also provides non-legal, business advice." *Bledsoe v. Remington Arms Co., Inc.*, No. 1:09-CV-69, 2010 WL 147052, at *2 (M.D. Ga., Jan. 11, 2010) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1974)); *see also Shelton*, 805 F.2d at 1327. Instead, the privilege protects only communications "made for the purpose of obtaining or providing professional legal advice." *Gillard*, 15A.3d at 59.

Defendant Polaris cites to *Shelton*, an Eighth Circuit case, arguing that courts in this jurisdiction rely on its tripartite test to determine the propriety of deposing a

party's attorney. *See* [Doc. 1-1]; *Shelton*, 805 F.2d at 1327.[2] The *Shelton* court limited depositions of a party's attorney only where (1) no other means exist to obtain the information other than deposing opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is "crucial" to the preparation of the non-moving party's case. *Id.* Polaris especially leans on the cruciality requirement in its opposition. *See, e.g.*, [Doc. 1-1, pp. 4, 8, 12-13]; [Doc. 8, pp. 3–5].

Consistent with earlier cases from this district, the Court again finds that the current situation differs from *Shelton. See, e.g.*, *Bledsoe*, WL 147052 at *2. In *Shelton*, the attorney-to-be-deposed actively represented a party in the suit at hand, as opposed to a party's former corporate counsel. *Shelton*, 805 F.2d at 1326. In fact, the *Shelton* court's analysis specifically centered on the deposition of opposing counsel in active litigation. *See generally id.*

Here, Vitrano no longer serves as Polaris' current counsel so that the underlying concerns rationalizing the use of the three-part *Shelton* framework are not present. Further, and most importantly, Vitrano's dual role as both former counsel and as Vice President "inherently beckons the purview of discovery." *Bledsoe*, WL 147052 at *2.

Because Vitrano's situation is distinguishable from the attorney's situation in *Shelton*, the Court declines to reflexively apply *Shelton*. Vitrano's non-legal roles and

[2] The court's holding in *Shelton* relied on the court's finding that deposing an opposing party's attorney was a popular form of harassment that disrupted the adversarial system. *Id.*

purported involvement in the subject of this case outside of any attorney-client relationship establish that his deposition may properly proceed, absent any undue burden, and assuming relevance.

It should be noted that the Court does not leave Vitrano or Polaris without recourse. Any objections based on attorney-client privilege, work product doctrine, or other privileges may be made during Vitrano's deposition. Fed. R. Civ. P. 30(c)(2). "A person may instruct a deponent not to answer . . . when necessary to preserve a privilege[] . . . ." *Id.*

### B. <u>Weighing Test</u>

The Court balances the Plaintiffs' need for information against Polaris' interest in its attorney-client relationship. Rule 26 provides guidance for this process.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Here, Plaintiffs seek purportedly non-duplicative information about a safety standard advocated for and considered by Polaris. They believe, based on prior depositions, that Vitrano has unique personal knowledge about these company policies

that they have been unable to obtain through other deposed witnesses. And, to the extent that Polaris has any privilege concerns, as discussed above, those worries can be addressed through objections to specific questions. Quashing the discovery altogether is not necessary to address the privilege concern. Here, Polaris' interest in their attorney-client relationship with Vitrano does not mean they can preemptively shut down any deposition.

**C. <u>Relevance</u>**

In federal court, matter sought in discovery must be "relevant to any party's claim or defense" to be discoverable. Fed. R. Civ. P. 26(b)(1). The test for relevancy is not the ultimate admissibility of the material to be discovered. Instead, relevance should be broadly and liberally construed to allow parties to fully develop and crystallize the factual issues for trial. *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 303–05 (5th Cir. 1973).

Here, Plaintiffs seek to gain potentially unique information about Polaris' and Vitrano's relationship with and compliance with industry standards. *See generally* [Doc. 2]. Regardless of whether compliance with industry standards is relevant in a claim for strict products liability under Pennsylvania law, the information sought is certainly relevant to a negligence claim. *See Sullivan v. Werner Co.*, 306 A.3d 846, (Pa. 2023) (quoting *Lewis v. Coffing Hoist Div., Duff-Norton Co.*, 528 A.2d 590, 594 (Pa. 1987)) (describing industry standards evidence as relevant to negligence when ruling it inadmissible in strict products liability cases, because it "go[es] to the reasonableness of

the [defendant's] conduct . . . ."). And, here, Plaintiffs bring a claim for negligence. [Doc. 1-1, p. 2]. Therefore, because compliance with industry standards—or the lack thereof—is relevant to negligence, and because the Plaintiffs currently bring a negligence claim, the matter sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Thus, it meets the baseline relevance requirement for discoverability.

## CONCLUSION

For the foregoing reasons, after careful review, the Court **DENIES** Defendant Polaris' motion to quash the subpoena issued to Paul Vitrano.

So ordered, this 14th day of September, 2026.

S/ Tilman E. Self
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**